AO 91 (Rev. 11/11) Criminal Complaint (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America<br>v.<br><br>LOUIS MICHAEL NEWTON<br><br>*Defendant(s)* | ) ) ) ) ) ) ) ) | Case No. 3:23-mj-185 |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **January 23, 2023 to present** in the county of **Greene** in the **Southern** District of **Ohio**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) & 924(a)(8)<br>26 U.S.C. §§ 5861(d) and 5871<br>21 U.S.C. § 841(a)(1) | Transfer or Possession of a Machinegun.<br>Possession of an Unregistered Machinegun.<br>Distribution of Controlled Substances. |

This criminal complaint is based on these facts:

See affidavit of TFO Robert A. Lee, FBI

☑ Continued on the attached sheet.

*Complainant's signature*

TFO Robert A. Lee, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: May 5, 2023

*Judge's signature*

City and state: Dayton, Ohio

UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

Your Affiant, Robert A. Lee, after being duly cautioned and sworn, makes the following statement:

1) I have been a sworn police officer with the Beavercreek, Ohio Police Department (BPD) since 2006. In October 2015, I was assigned to the BPD's investigations division. Since 2022, I have served as a federally sworn Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), assigned to the Dayton Residence Agency. I attended the Ohio Peace Officer Training Academy. I have received additional training in investigating narcotics, computer crimes, homicide, and sexual assault cases. I have participated in the execution of many search warrants involving drug trafficking and associated offenses. As an FBI Task Force Officer, I am authorized to investigate violations of federal laws and execute warrants issued under the authority of the United States.

2) The information contained in this affidavit is based upon my prior law enforcement training, personal knowledge and experience, my review of relevant reports of investigations, review of records and documents, as well as other information related to me by other law enforcement personnel familiar with subject investigation. I have not included every fact I have become privy to concerning this investigation. Rather, I have only set forth those facts I believe are necessary to establish probable cause to issue a warrant for the arrest of an individual identified as **LOUIS MICHAEL NEWTON** (hereinafter referred to as "**NEWTON**") whose home address is known to be 1848 Surrey Trail, Apartment 8, Sugarcreek Township, Greene County, Ohio.

3) Based on my prior law enforcement training and experience together with my knowledge of the facts set forth in this affidavit, I believe probable cause does exist to believe that **NEWTON** has committed certain violations of federal law to include: 18 U.S.C. § 922(o)(1) (Transfer or Possession of a Machinegun); 26 U.S.C. §§ 5861(d) and 5871, (Possession of an Unregistered Machinegun); and 21 U.S.C. § 841(a)(1) (Distribution of Controlled Substances.

### Confidential Source (CS)

4) A Confidential Source (CS) assisted law enforcement authorities in conducting subject investigation. Over the last year, this CS has proven him/herself to be a credible, reliable, accurate and trustworthy source of information and intelligence for the Greene County ACE Task Force. Under the direction and supervision of ACE Task Force officials, this CS has routinely and consistently provided reliable, truthful and accurate information on the criminal activities of **NEWTON**. This CS has additionally purchased contraband evidence in this and other criminal investigations.

### PROBABLE CAUSE

5) On or about January 26, 2023, ACE Task Force officials opened an investigation into **NEWTON** concerning his suspected possession, manufacturing, and distribution of machinegun conversion devices (MCD), along with his suspected possession and distribution of marijuana. As detailed below, with the assistance of the CS, law enforcement authorities have successfully completed the controlled purchase of two (2) MCDs along with a total of at least ½ pound of marijuana from **NEWTON.**

6) Based upon my prior law enforcement training and experience, I know that pursuant to the National Firearms Act (NFA), 26 U.S.C. § 5845(a), a machinegun is defined

2

as a "firearm." The NFA further defines a "machinegun" as "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). This NFA definition of a "machinegun" includes firearm conversion devices such as MCDs and so-called "switches." An MCD, commonly referred to as a "Glock Switch" is a device specifically designed and intended to convert a semiautomatic, Glock-type pistol into a fully automatic machinegun. As such MCDs meet the statutory definition of a "machinegun". Under the NFA, all machineguns are required to be registered in the National Firearms Registration and Transfer Record.

7) The first attempted control purchase of a MCD from **NEWTON** occurred on February 7, 2023. On this date, the CS communicated with **NEWTON** via *Snapchat* and cell phone. During their conversations, **NEWTON** and the CS discussed the two types of Glock "switches" **NEWTON** had available for purchase. **NEWTON** further discussed, having a "switch" with a blade, and one with a "selector switch". The CS indicated he/she wanted two "switches" for his Glock 19. **NEWTON** provided a detailed description on how a MCD works.

8) On February 9, 2023, the CS completed two controlled purchases of MCDs (commonly referred to as "Glock switches") and a small quantity of suspected marijuana from **NEWTON** at the Steak 'N Shake Restaurant parking lot located at 6380 Wilmington Pike, Dayton, Ohio. **NEWTON** was employed at said restaurant. More specifically, on that date:

3

a. At the direction of law enforcement, the CS communicated with **NEWTON** via cell phone and *Snapchat*, prior to the controlled purchase. During their conversation, **NEWTON** and the CS discussed buying the MCDs and "pre-rolled" marijuana joint cigarettes.

b. Later that same day, law enforcement authorities met with the CS at a predetermined location, where the CS's person and vehicle were thoroughly searched prior to the attempted controlled purchase for any contraband and weapons. The search produced negative results. The CS was the equipped with an electronic transmitting /recording device and pre-marked "buy money" to purchase the desired contraband items from **NEWTON**. The CS was surveilled by law enforcement authorities at all times prior to and after the said meeting between the CS and **NEWTON**. Surveillance units observed **NEWTON** arrive on foot and enter CS's vehicle. While inside said vehicle, **NEWTON** asked the CS to check out a pistol he brought with him and discussed a suppressor device that was installed on the gun. **NEWTON** then provided the CS with a small quantity of marijuana and two MCDs commonly referred to as "Glock Switches" in exchange for $140.00 of pre-marked "buy money".

c. **NEWTON** further described how the MCDs worked. During subsequent conversations, **NEWTON** further explained, how an AR (assault rifle) "switch" worked, and how to install the "switch" into a lower part of an AR. **NEWTON** provided the CS with a so-called "ghost switch," which consists of a back plate and blade. When installed, this type of "switch" appears flush on the firearm's slide, and as such is not easily detectable to the untrained eye. **NEWTON** further

4

indicated that if the CS were to get pulled over by police, the officer would never know his firearm was in fact converted to a fully automatic machinegun pistol. **NEWTON** also described how the MCD, or "switch" permits a Glock pistol to fire, 11 rounds a second or 100 rounds every 9 seconds.

d. After the controlled purchase was completed, **NEWTON** exited the CS's vehicle and departed the area on foot. Surveillance units observed **NEWTON** as he walked Southeast from the target location towards the Cedar Trail Apartment Complex in Sugarcreek Township.

e. Surveillance units further observed **NEWTON** walk the short distance to 1848 Surrey Trail where he proceeded to the second floor of the apartment complex. **NEWTON** was thereafter observed standing in front of a window of his apartment.

f. The CS departed the meet location and proceeded back to a predetermined other location where he/she met with law enforcement officials. The CS and his/her vehicle were again searched for money, weapons, or contraband. Nothing but the purchased contraband items were found. These purchased items were thereafter transported to the Greene County Sheriff's Office where Det. Tavner field tested the marijuana. The field test was positive for THC in the "pre-rolled" marijuana cigarettes. The MCDs and suspected marijuana were placed into the secure evidence locker maintained at the Greene County Sherriff's Office.

g. The two said MCDs "Glock switches" were subsequently submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Firearms

Technology Criminal Branch (FTCB) located in Martinsburg, West Virginia for technical examination and analysis. This analysis confirmed both devices were in fact MCDs. Neither device bore any manufacturers marks of identification or serial numbers as required by 26 U.S.C. §5842. The ATF further concluded the subject MCDs were constructed of a polymer substance and appeared to have been manufactured utilizing an additive manufacturing process, which is commonly referred to as "3-D Printing." A further ATF review confirmed that there is no record of **NEWTON** ever registering either machinegun or "MCD" in the National Firearms Registration and Transfer Record as required by federal law.



The FTCB report signed March 31, 2023, concluded the following:

6

**Exhibit 1A** is a combination of parts designed and intended for use in converting a weapon into a machinegun.
therefore, it is a "**machinegun**" as defined in 26 U.S.C. § 5845(b).
**Exhibit 1A, b**eing a machinegun, is also a "**firearm**" as defined in 26 U.S.C. § 5845(a)(6).
**Exhibit 1A** is a "**machinegun**" as defined in 18 U.S.C. § 921(a)(24).
**Exhibit 1A** bears no NFA manufacturer's marks of identification or serial number as required by 26 U.S.C. §5842.

**Exhibit 1B** is a part designed and intended solely and exclusively, for use in converting a weapon into a machinegun; therefore, Exhibit 1B is a "**machinegun**" as defined in 26 U.S.C. § 5845(b).
**Exhibit 1B,** being a machinegun, is also a "**firearm**" as defined in 26 U.S.C. § 5845(a)(6).
**Exhibit 1B** is also a "**machinegun**" as defined in 18 U.S.C. § 921(a)(24).
**Exhibit 1B** bears no NFA manufacturer's marks of identification or serial number as required by 26 U.S.C. § 5842.

9) On April 3, 2023, the CS spoke to **NEWTON** via *Snapchat* and agreed to purchase a Glock pistol with a "switch" installed, and a quarter pound of marijuana. After obtaining the offer to sell, your Affiant learned that **NEWTON** was requesting $800 for the Glock pistol containing the "switch," and $400 for a quarter pound of marijuana. The CS arranged to meet **NEWTON** to complete the purchase said items. Upon arrival, the CS parked his/her vehicle in the Steak 'N Shake restaurant parking lot. **NEWTON** thereafter exited the restaurant wearing a Steak 'N Shake uniform. He entered the CS's vehicle and indicated he only brought the marijuana and didn't have the gun with him. **NEWTON** then passed a Steak 'N Shake bag to the CS which contained a sandwich baggie full of marijuana. The CS in-turn handed **NEWTON** a stack of pre-marked "buy money." **NEWTON** counted out $400 in currency and returned the remaining bills back to the CS. Prior to exiting the vehicle, **NEWTON** pulled out a pistol from his waistband to show the CS. **NEWTON** then removed a loaded magazine. **NEWTON** then returned the loaded magazine back into the gun and returned it to his waistband before exiting the CS's

vehicle to return to work at the Steak 'N Shake Restaurant. The CS departed the area and drove to the predetermined location to meet with law enforcement officials. Upon arriving, the CS's person and vehicle were searched. No contraband was found, and the CS returned the remaining buy money to the law enforcement officials.

10) On April 27, 2023, **NEWTON** agreed to sell the CS a Glock pistol with a switch installed, 2 additional switches, and a tool to remove the switches. However, this planned transaction never took place due to fact **NEWTON** claimed he was unable to leave his job at the restaurant due to employee manning shortages. Below, is a still shot taken from a *Snapchat* video transmitted from **NEWTON** to the CS. The pictured Glock pistol has a MCD installed and was set to be sold to the CS by **NEWTON**.



11) On May 2, 2023, this Court issued a search warrant for **NEWTON's** residence located at 1848 Surrey Trail, Apartment 8, Sugarcreek Township, Greene County, Ohio. (See

8

Case No. 3:23-mj-182). On May 3, 2023, members of the ACE Task Force executed said warrant. Law enforcement authorities recovered from **NEWTON's** apartment approximately 21 suspected MCDs for Glock handguns and 7 MCDs for ARs (assault rifles). The following firearms were also seized by law enforcement officials during together with the following firearms:

Firearms

| Item# | Manufacturer | Serial # | Model | Caliber | Style | Assessories |
|---|---|---|---|---|---|---|
| 2 | GLOCK | XCG823 | | 9mm | PISTOL | Trijicon Sight and OlightBalor Pro |
| 14 | SIG SAUER | 37a043110 | P220 | 45ACP | PISTOL | |
| 15 | FNH | 386180509 | FN | 5.7X28 | PISTOL | two magazines with 37 total rounds of ammc |
| 44 | SPIKE TACTICAL | | HAVOC LAUNCHER | 37mm | | |
| 25 | PTR | 9MK008933 | ptr9 | 9mm | PISTOL | two magazines with 53 rounds of ammo |
| 26 | SIG SAUER | 66AZ77057 | P365 | 9mm | PISTOL | two magazines |
| 31 | SPIKE TACTICAL | SRM006600 | ST15 | MULTI | RIFLE | Vism Sight and TacStar ammo catcher |
| 41 | SIG SAUER | 27B078697 | P238 | 0.38 | PISTOL | ArmaLaser TR8 and black holster |
| 43 | RUGER | 365-49094 | SR22 | .22LR | PISTOL | |
| 45 | UNIVERSAL | 345554 | M1 | 30cal | RIFLE | in a black soft case with two magazines with |
| 51 | SPIKE TACTICAL | SCR088041 | ST15 | MULTI | RIFLE | NcStar scope and tripod and sling |

12) Based upon the aforesaid facts and circumstances, your Affiant respectfully requests this Court issue an arrest warrant for **LOUIS MICHAEL NEWTON** for suspected violations of 18 U.S.C. § 922(o)(1) (Transfer or Possession of a Machinegun); 26 U.S.C. §§ 5861(d) and 5871, (Possession of an Unregistered Machinegun); and 21 U.S.C. § 841(a)(1) (Distribution of Controlled Substances).

9

Respectfully submitted,

ROBERT A. LEE
FBI Task Force Officer

Sworn to before me this 5th day
of May, 2023.

CAROLYN H. GENTRY
United States Magistrate Judge

10